Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor changes to Findings of Fact 8-12, Conclusion of Law 1, and Award 1, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following FINDINGS OF FACT:
The following was entered into by the parties at the hearing before the Deputy Commissioner as a
STIPULATION
Defendants continued to pay compensation to plaintiff through [April 27, 1994,] the date of [the last] hearing [before the Deputy Commissioner].
* * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. As of March 25, 1991, plaintiff had been employed by defendant-employer almost one year as a convenience store manager. She sustained an injury by accident arising out of and in the course of her employment on that date when she caught a case of soft drinks which was falling from a shelf and hurt her back. The next day she went to Dr. McManus, her family doctor, who diagnosed her condition as a back strain. He treated her conservatively with medication and physical therapy over the next several months, and then referred her to Dr. Grubb, an orthopaedic surgeon, for evaluation.
2. Dr. Grubb examined plaintiff on June 12, 1991, diagnosed her as having a thoracic sprain/strain, and recommended further therapy as well as back school. He subsequently ordered an MRI, which only showed a small spur at T-6, and then sent her to a rehabilitation program. She continued to return to Dr. McManus for treatment during this time as well.
3. On November 21, 1991, plaintiff went to Dr. Brenner, another orthopaedic surgeon, for a second opinion. He concluded that her symptoms were primarily myofascial, with no evidence of discogenic disease or nerve compression. He released her to return to work with restrictions on repetitive bending, stooping, or lifting over twenty to thirty pounds, but her employer did not have work within those restrictions. She received further physical therapy in addition to biofeedback and a functional capacity evaluation. On January 13, 1992 Dr. Brenner released her from care. She continued to see Dr. McManus fairly regularly after that date until May 6, 1992, and then he also released her. However, she returned to him periodically thereafter for symptomatic care. Dr. McManus treated her for symptoms of depression, as well as for her back problems.
4. Plaintiff was not able to return to her former job with defendant-employer, which involved heavy lifting while stocking shelves and the cooler, and her employer did not offer alternative work to her. As of January, 1992, she was 42 years old, she could read and write well, and she had had experience handling paperwork and supervisory duties. Her prior work experience had been primarily in cutting and sewing upholstery, but she had also sewed horse tack, had operated a boring machine, and had performed the job at the convenience store. She was capable of performing work not requiring repetitive lifting of objects weighing more than fifteen to twenty pounds or repetitive pushing, pulling, twisting, stooping, bending, squatting, kneeling or using her upper extremities overhead. She was able to stand up to an hour at one time, and could work on a full-time basis.
5. Defendants hired George Lentz to work with plaintiff on finding work, and she began looking for other employment in March and April 1992. Initially, she was very cooperative with job placement efforts and pursued a number of leads provided to her, as well as finding potential positions on her own. However, her attorney intervened and instructed Mr. Lentz to no longer contact plaintiff. Although Mr. Lentz sent job leads to the attorney, he received no response from them. Plaintiff's job search slowed considerably. In fact, she did not look anywhere for work in May and August, and only made a few contacts in June and July. She did not follow-up on all of the leads sent to her, although in some instances she was justified.
6. Plaintiff had not looked for work in 1993 at the time of the June 17, 1993 hearing, and Mr. Lentz had closed his file as of that January due to the lack of response from plaintiff or her attorney. By Order filed June 22, 1993, she was directed to cooperate with vocational placement efforts or be subject to having her compensation terminated. Defendants had admitted liability for benefits under the Workers' Compensation Act for her injury, and had continued to pay compensation to her up until that time.
7. Thereafter, plaintiff's cooperation was generally perfunctory at best. She pursued some of the leads Mr. Lentz gave her, but not all of them. She apparently had some problems with transportation which were ultimately resolved with the insurance company providing mileage reimbursement. There were also some problems with Mr. Lentz, who did not adequately screen the job leads. It was frustrating for plaintiff to contact prospective employers for jobs that did not comply with her restrictions. In view of her car problems, and the fact that she lived in a rural area, Mr. Lentz should have been more careful in screening job leads. However, her position that convenience store work was automatically outside of her restrictions was not accurate. Dr. Brenner did not exclude such work and, if a job were available where she would only work as a cashier, such a position would be appropriate.
8. Due to a problem arising from an inappropriate referral, a different vocational counselor was assigned to work with plaintiff in the fall of 1993. She made an effort to find employment on October 20, 1993 at several different places, and then did not pursue a job search until the middle of February. Mr. Swain sent job leads to her in mid-January which included a position as a desk clerk at the Econo Lodge in Asheboro. There was a good likelihood that she could have obtained that job, but she delayed applying for weeks, which gave the manager a negative impression of her willingness to work. Although there were days during that period when she could not have applied due to a reaction to medication (which had cleared up as of January 27) and health problems of her father, she did not have a reasonable excuse for her failure to follow-up on that lead.
9. Plaintiff has not been rendered totally and permanently disabled by this injury. She clearly has been able to work in some capacity since she reached maximum medical improvement on January 13, 1992. Defendants Form 28B, filed shortly after the Deputy Commissioner's decision, indicates that defendants continued paying temporary total benefits through September 6, 1994. As of the date of hearing on June 17, 1993, she had not been looking for work for over six months, and had only looked sporadically for the previous six months. Despite this fact, she was allowed an additional period of time in which to pursue suitable employment. However, she did not engage in a reasonable job search. Not only did she not follow-up on leads provided to her, but when she did, she placed greater limitations on her work activities than her actual restrictions. The job at the Econo Lodge which Mr. Swain suggested she seek in mid-January 1994 would have been within her capacity, but she did not apply until late February.
10. As of February 15, 1994, when the hotel clerk position was essentially withdrawn, plaintiff had earning capacity. Her specific earning capacity cannot be determined in view of her unwillingness to make reasonable effort to look for employment.
11. Plaintiff sustained a 3% permanent partial disability to her back as a result of this injury. She never underwent surgery or had a surgical lesion. Her condition did not materially change after she reached maximum medical improvement.
12. Plaintiff has failed to prove the degree, if any, of diminution in her wage-earning capacity entitling her to temporary partial disability benefits.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff was entitled to nine (9) weeks of permanent partial disability at her full compensation rate of $200.01 per week from and after January 14, 1992, totaling $1,800.00, in respect to her 3% back impairment, and defendants have paid compensation through and beyond that period. G.S. § 97-30; Gupton
v. Builders Transport, 320 N.C. 38, 42, 357 S.E.2d 674 (1987).
2. Plaintiff is not entitled to further compensation in that she was capable of working but did not make a reasonable effort to obtain employment. Russell v. Lowe's ProductsDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454 (1993).
3. Plaintiff is entitled to have defendants provide all medical compensation necessary by reason of this injury by accident to the extent it tends to effect a cure, give relief or lessen her disability. G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff was entitled to temporary total disability benefits through January 14, 1992 and permanent partial disability benefits for nine (9) weeks thereafter, which has heretofore been paid. Assuming defendants continued to pay compensation to plaintiff through February 14, 1994, plaintiff is not entitled to further compensation. To the extent defendants paid compensation to her after that date, they have overpaid benefits due.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for the same have been submitted through the defendants to the Industrial Commission and approved by the Commission.
3. An attorney's fee in the amount of 25% of the compensation awarded after the original date of hearing is approved for plaintiff's counsel.
4. Each side shall pay its own costs. Plaintiff shall pay the standard witness fee permitted by statute to Mr. Hickin.
 S/ ________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN CHAIRMAN
S/ ________________________ COY M. VANCE COMMISSIONER
JRW/JSS/tmd 3/28/95